**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AMELIA HOFFMAN, ) ) ) ) ) Plaintiff ) ) v. ) ) NEWTON-WELLESLEY HOSPITAL, ) ) ) Defendant. ) ) ) | Case No. 26-cv-10220-DJC |

**MEMORANDUM AND ORDER**

**CASPER, C. J.**                                                                                    **June 15, 2026**

**I.      Introduction**

Plaintiff Amelia Hoffman ("Hoffman") has filed this action against Defendant Newton-Wellesley Hospital ("Newton-Wellesley") asserting claims under Count I and Count II arising out of her termination of employment at Newton-Wellesley.  D. 1-1.  Newton-Wellesley has now moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  D. 7.  For the reasons stated below, the Court ALLOWS the motion.  Id.

**II.      Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734

1

F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit.  Id.  Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  If they do not, then dismissal is warranted.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III.    Factual Background

The following facts are drawn from Hoffman's complaint, D. 1-1, and the documents attached and referenced therein, and are accepted as true for the purpose of resolving the motion to dismiss.

Hoffman was employed by Newton-Wellesley, a hospital in Massachusetts, as a registered nurse and lactation expert/consultant from September 2013 to February 2023.  Id. ¶¶ 1-2.  On December 5, 2019, Hoffman fell down an "untreated" staircase and walkway at the hospital and suffered serious injuries to her left knee, leading to "incapacitation and her inability to work for a period of eight months."  Id. ¶ 3.  At some point thereafter, Hoffman's request to "return to work with crutches" was denied.  Id.  Subsequently, Hoffman returned to work, "still dealing with a failed knee replacement" and "constant pain and discomfort."  Id. ¶ 4.  Upon her return, hospital personnel allegedly denied her "seniority" and denied her return to the lactation clinic "for an indefinite time period."  Id.  Thereafter, Hoffman made a request for "accommodations to deal with limited mobility and constant pain."  Id. ¶ 5.  In response, a person, not identified in the complaint, allegedly sought permission from Hoffman's immediate supervisor to have Hoffman

"work in the [lactation] clinic to get off her feet while healing." Id.  This request was also denied. Id.

A period of eighteen months passed after these requests were denied.  Id. ¶ 6.  Thereafter, Hoffman was diagnosed with a need for a third knee replacement due to the injuries sustained from her December 5, 2019 fall.  Id. ¶ 9.  As alleged, these injuries and her third knee replacement surgery "contributed to [Hoffman's] delay and her inability to return to the workforce in her prior capacity."  Id.  In February 2023, "without further [n]otice," Hoffman was terminated from Newton-Wellesley.  Id. ¶ 10.

## IV.    Procedural History

Hoffman initiated this action in Middlesex Superior Court on October 20, 2025.  D. 1-1. Newton-Wellesley subsequently removed this action to this Court on January 20, 2026, D. 1, and has now moved to dismiss the complaint, D. 7.  The Court heard the parties on the pending motion and took this matter under advisement.  D. 20.

## V.    Discussion

### A.    Counts I and II:  Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

In Count I, Hoffman alleges that Newton-Wellesley failed to grant her accommodation requests in violation of her employment contract.  D. 1-1 ¶¶ 3-13.  In Count II, Hoffman alleges that the alleged denials of these accommodation requests and her ultimate termination also breached her employment contract's implied covenant of good faith and fair dealing.  Id. ¶¶ 4-16.[1]

---

[1] Hoffman has failed to cite any supporting authorities in her opposition.  D. 12.  Under L.R. 7.1(b)(2), "[a] party opposing a motion shall file . . . a memorandum of reasons, including citation of supporting authorities, why the motion should not be granted."  "This court '"enjoy[s] broad latitude in . . . administering [the] local rules"' and 'may "demand adhered to specific mandates contained in the local rules."'"  Taylor v. Grunigen, No. 19-cv-11947-MBB, 2022 WL 1239955, at *12 n.26 (D. Mass. Apr. 26, 2022) (alterations in original) (quoting Blanchard v.

Newton-Wellesley moves to dismiss both counts on the grounds that Hoffman failed to allege the existence of an employment contract and that, even if she did, the claims are preempted by the Americans with Disabilities Act ("ADA") and Mass. Gen. L. c. 151B.  D. 8 at 8-12.

To state a claim for breach of contract, a plaintiff must plead "(1) that the parties had an agreement supported by valid consideration; (2) that plaintiff[] w[as] ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiff[] w[as] damaged." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).  Essential to such a claim is the existence of a contract.  See id. at 194-95.  "Thus, a claim for breach of a written contract must either (1) quote pertinent contractual language; (2) contain a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect." Foss v. Marvic, 365 F. Supp. 3d 164, 167 (D. Mass. 2019), aff'd, 994 F.3d 57 (1st Cir. 2021).  Whichever method a plaintiff chooses, she must ensure that the complaint describes with sufficient specificity the contract's "relevant terms, its duration, and when it was formed." Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 66 (D. Mass. 2018).  Moreover, the complaint must also identify "'what obligations were imposed on each of the parties by the alleged contract.'" Buck v. American Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007) (quoting Doyle, 103 F.3d at 195).

Under Massachusetts law, "[t]he covenant of good faith and fair dealing is implied in every contract." Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 385 (2004).  The covenant provides that "neither party shall do anything that will have the effect of destroying or

---

Cortes-Molina, 453 F.3d 40, 46 (1st Cir. 2006) (brackets in original omitted) (quoting NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 6 (1st Cir. 2002)).  Although "[a] district court may deny a motion, without prejudice, for failure to comply with the Local Rules," Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., No. 11-cv-10791-MLW, 2013 WL 12321564, at *1 (D. Mass. June 14, 2013); see L.R. 1.3, the Court declines to do so here and proceeds to addressing Newton-Wellesley's substantive grounds for dismissal.

injuring the right of the other party to the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (internal citation omitted).  However, "[t]he implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016); see Lanza v. Fin. Indust. Regulatory Authority, 953 F.3d 159, 165 (1st Cir. 2020) (noting that the scope of the covenant "is only as broad as the contract that governs the particular relationship") (internal citation and quotation marks omitted).  In determining whether the implied covenant of good faith and fair dealing was breached, courts use the same analysis as in a breach of contract and look to the reasonable expectations of the parties. Doe, 177 F. Supp. 3d at 612.

Here, both Hoffman's breach of contract claim and her breach of the implied covenant of good faith and fair dealing claim fail because Hoffman has not sufficiently alleged the existence of an employment contract with Newton-Wellesley.  Hoffman alleges only that "she had a Contract with [Newton-Wellesley] for her continued employment," D. 1-1 ¶ 14, and Newton-Wellesley's alleged denial of her purported accommodation requests was "in [v]iolation of [her] [r]ights under her Employment Contract," id. ¶ 12.  This purported employment contract is not attached to the complaint, and the complaint does not provide a description of "[its] terms . . ., its duration, or even when it was formed." Doyle, 103 F.3d at 195.  The complaint also lacks allegations identifying "'what obligations were imposed on each of the parties by the alleged contract.'" Hogan v. Teamsters Loc. 170, 495 F. Supp. 3d 52, 58 (D. Mass. 2020) (quoting Alenci v. Hometown Am. Mgmt., LLC, No. 19-cv-12244-LTS, 2020 WL 2515872, at *4 (D. Mass. May 15, 2020)).  Hoffman's conclusory allegations about a breach of contract (and breach of the implied convenient, D. 1-1 ¶¶ 12, 14, without more, "is insufficient to allege the existence of an enforceable contract." Madden v. Ascensus Coll. Sav. Recordkeeping Servs., LLC, No. 20-cv-10565-FDS,

2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021); see Yaghoobi v. Tufts Med. Ctr., Inc., 762 F. Supp. 3d 85, 97-98 (D. Mass. 2025) (dismissing breach of contract claim where plaintiff alleges only that employer breach unidentified contract). Notably, Hoffman fails to respond to this shortcoming in her opposition. See D. 12 at 1-8; see also Tian v. Aspen Tech., Inc., 53 F. Supp. 3d 345, 369 n.8 (D. Mass. 2014) (concluding that any opposition to dismissal of claim is waived where plaintiff failed to adequately address claim in her opposition to defendant's motion to dismiss). In the absence of plausible allegations that an enforceable contract exists, Hoffman has necessarily failed to state a claim for breach of contract and for breach of the implied covenant of good faith and fair dealing.[2]

Further, to the extent Hoffman's breach of contract and breach of the implied covenant of good faith and fair dealing claims are premised on Newton-Wellesley's alleged failure to reasonably accommodate her disability, see D. 1-1 ¶ 12, these claims are preempted by Chapter 151B. "The SJC has repeatedly held that Chapter 151B, where applicable, 'provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections.'" James v. Bos. Police Dep't, No. 19-cv-10430-FDS, 2020 WL 108266 at *4 (D. Mass. Jan. 9, 2020) (emphasis omitted) (quoting Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994)); see Mass. Gen. L c. 151B, § 9. The alleged acts comprising Hoffman's claims that Newton-Wellesley breached her employment contract by discriminating against her on the basis of her disability are thus barred under Chapter 151B's exclusivity provision. See Robinson v. City of Boston, 71 Mass. App. Ct. 765, 767 (2008) (dismissing common law breach of contract claim

---

[2] As the complaint makes no reference to Newton-Wellesley's collective bargaining agreement with the Massachusetts Nurses Association, which Newton-Wellesley references in its motion to dismiss, D. 8 at 2, 10-11, the Court will not consider said agreement, see Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993), and need not reach Newton-Wellesley's preemption arguments under the Labor Management Relations Act as to same. See D. 8 at 10-11.

that could have been brought under Chapter 151B); see also James, 2020 WL 108266 at *4 (noting that Chapter 151B "preemption applies regardless of whether a plaintiff has brought, or is still able to bring, a claim under Chapter 151B").

To the extent Hoffman's breach of contract and breach of the implied covenant of good faith and fair dealing claims are alternatively premised on the argument that Newton-Wellesley wrongfully discharged her due to her disability in violation of her employment contract, such claims are likewise preempted by the ADA. "In Massachusetts, a claim for wrongful discharge in violation of public policy, as a common law remedy, may only be sought where no statutory scheme provides a remedy." Logie v. Massachusetts Bay Transportation Auth., 323 F. Supp. 3d 164, 174-75 (D. Mass. 2018). Here, the ADA provides "a potential remedy" for Hoffman's claim that she was unlawfully terminated based on her disability. Id. at 175. "[Hoffman]'s wrongful termination claim should, therefore, be dismissed." Id. (collecting cases dismissing preempted wrongful termination claims); see Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985) (noting that "where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme"), aff'd, 397 Mass. 1004 (1986); Wong v. Resolve Tech., No. 10-cv-11642-DJC, 2011 WL 3157198, at *7 (D. Mass. July 25, 2011) (dismissing claim for termination of at-will employment in violation of public policy where the ADA provided a potential remedy for the complained-of conduct). Accordingly, Hoffman's breach of contract and breach of the implied covenant of good faith and fair dealing claims fail for the independent reason that they are preempted.

For the aforementioned reasons, Hoffman has failed to plausibly allege her breach of contract and breach of the implied covenant of good faith and fair dealing claims.

**B.**     **Constitutional Claims**

As explained above, Hoffman's failure to sufficiently allege the existence of an employment contract with Newton-Wellesley is dispositive of both her breach of contract and breach of the implied covenant of good faith and fair dealing claims. Under her breach of contract cause of action, Hoffman's complaint contains a single allegation that Newton-Wellesley's denial of her purported accommodation requests also violates "the [p]rovisions of the [ADA], and were in [v]iolation of her rights under the Constitution of the United States, as well as, the Massachusetts Bill of Rights entitling her to fair treatment under the [l]aw to [r]easonable [a]ccommodations in the workplace." D. 1-1 ¶ 12. To the extent Hoffman sought to assert individual claims under the U.S. Constitution or the Massachusetts Bill of Rights, these claims cannot survive a Fed. R. Civ. P. 12(b)(6) motion at least for the reason that the complaint does not specify under which provisions Hoffman purports to assert these claims and therefore fails to provide fair notice of any such claims in compliance with Fed. R. Civ. P. 8(a). See Autila v. Massachusetts Bay Transportation Auth., 342 F.R.D. 23, 35 (D. Mass. 2022) (noting that "[i]n accordance with Rule 8(a), a complaint must include 'sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests'") (quoting Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 46 (1st Cir. 2011) (citation omitted)); Cash Energy, Inc. v. Weiner, 768 F. Supp. 892, 896 (D. Mass. 1991) (dismissing complaint based, in part, on complaint's "failure to give fair notice of the legal theory under which the action is proceeding").

Even assuming she had, these claims fail. "To make out a section 1983 claim, a plaintiff must allege facts sufficient to show that the defendants acted under color of state law and caused the deprivation of federal rights." Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021). For Defendants to have acted under the color of state law, it must be fair to

characterize them as state actors.  Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (citing

Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005)).  If "challenged

conduct cannot be classified as state action, a section 1983 claim necessarily fails."  3137, LLC v.

Town of Harwich, 126 F.4th 1, 9 (1st Cir. 2025).  Here, the complaint is devoid of allegations that

Newton-Wellesley is a state actor.  As such, this claim "necessarily fails."  Id.

To the extent Hoffman purports to assert a claim under the Massachusetts Bill of Rights,

"there is no private cause of action directly under the Massachusetts Constitution" which alone

warrants dismissal.  Kunz v. Town of Northbridge, No. 14-cv-13894-TSH, 2017 WL 3927616, at

*11 (D. Mass. Mar. 13, 2017), report and recommendation adopted, No. 14-cv-13894, 2014 WL

12733702 (D. Mass. Oct. 17, 2014); see Martino v. Hogan, 37 Mass. App. Ct. 710, 720-21 (1994).

But even if Hoffman properly assert a claim under the Massachusetts Civil Rights Act, see Kunz,

2017 WL 3927616, at *11; Mass. Gen. L. c. 12, § 11I, she has failed to state such a claim.  "'To

establish a claim under the MCRA, a plaintiff must prove 1) h[er] exercise or enjoyment of h[er]

rights secured by the Constitution or the laws of either the United States or the Commonwealth

have been subjected to interference or attempted interference by the defendants and 2) that the

interference or attempted interference was by "threats, intimidation or coercion."'"  Thomas v.

Town of Salisbury, 284 F. Supp. 3d 66, 77 (D. Mass. 2018) (emphasis omitted) (quoting Carroll

v. City of Quincy, 441 F.Supp.2d 215, 226 (D. Mass. 2006) (quoting Bally v. Ne. Univ., 403 Mass.

713, 717 (1989))), aff'd sub nom. Thomas v. Harrington, 909 F.3d 483 (1st Cir. 2018).  Here, even

assuming Hoffman plausibly alleged interference with a constitutionally secured right, the

complaint contains no allegations that Newton-Wellesley deprived her of any such right via

"threats, intimidation or coercion."  Id. (internal citations and quotation marks omitted); see

Kennie v. Nat. Res. Dep't of Dennis, 451 Mass. 754, 763 (2008) (noting that "[a]n interference

9

with a secured right is only a violation of the Act if it is accomplished through threats, intimidation, or coercion"). Accordingly, this claim too fails.

C.   **ADA Claim**

To the extent Hoffman sought to assert an individual claim under the ADA, however, construing this allegation "as to do substantial justice," see Mass. Civ. R. P. 8(f); Fed. R. Civ. P. 8(e), and in light of the fact that Newton-Wellesley moved to dismiss, in part, "a direct claim under the ADA," in the event that Hoffman "recast[ed]" her breach of contract claim as such, D. 8 at 12; see id. at 12-16, the Court address its grounds to dismiss such claim below.

"A plaintiff can press several different types of claims of disability discrimination" under the ADA. Nunes v. Massachusetts Dep't of Correction, 766 F.3d 136, 144 (1st Cir. 2014). As relevant here, a plaintiff can assert both that she experienced "disparate treatment on account of disability, i.e., that the disability actually motivated the defendant's challenged adverse conduct" and that "a public entity has refused to affirmatively accommodate his or her disability where such accommodation was needed to provide 'meaningful access to a public service.'" Id. at 144-45 (internal citation omitted). Reading the complaint in the light most favorable to Hoffman, the complaint appears to embrace both a claim that Newton-Wellesley terminated her on the basis of her disability (disability discrimination claim), D. 1-1 ¶ 10, and that Newton-Wellesley denied her alleged requests to (1) "return to work with crutches" following her fall, id. ¶ 3, and (2) "work in the [lactation] clinic to get off her feet while healing" (failure to accommodate claim), id. ¶ 5; see id. ¶¶ 6, 11-12; D. 8 at 13-15 (defending against both theories); see also Manning v. Abington Rockland Joint Water Works, 357 F. Supp. 3d 106, 115 (D. Mass. 2019) (noting that "often there is an overlap between a classic disability discrimination claim and a failure to accommodate claim"). Newton-Wellesley moves to dismiss on the grounds that: (1) Hoffman has failed to

administratively exhaust these claims;[3] (2) Hoffman has failed to plausibly allege that she is a qualified individual under the ADA; and (3) Hoffman is estopped from alleging she could perform the essential functions of her job with a reasonable accommodation.  D. 8 at 12-16.

> 1.    *Hoffman's failed to administratively exhaust her failure to accommodate claim*

As to the failure to administratively exhaust ground, "[a]ffirmative defenses . . . may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113-14 (1st Cir. 2009) (alteration in original) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation marks omitted)).  A failure to exhaust administrative remedies argument is such an "affirmative defense" that a defendant may raise at this stage and that the defendant "bears the burden of pleading and proving."  Nakanwagi v. Exec. Off. of Trial Ct., No. 23-cv-10533-FDS, 2024 WL 38749, at *7 (D. Mass. Jan. 3, 2024) (citing Owens v. West, 182 F. Supp. 2d 180, 190 (D. Mass. 2001)).  As such, although "to prevail" on an ADA claim a plaintiff "will need to show that she properly exhausted administrative remedies, most courts agree that there is no requirement that a complaint

---

[3] Although this ground is presented as a statute of limitations argument, D. 8 at 12-13, the substance of Newton-Wellesley argument goes to administrative exhaustion, not statute of limitations, id.  But to the extent Newton-Wellesley asserts a statute of limitations argument under Massachusetts' three-year limitations period, see Verrier v. Beth Israel Deaconess Hosp.-Plymouth, Inc., 706 F. Supp. 3d 142, 146 (D. Mass. 2023), based on the lapse in time between the alleged denials of Hoffman's purported accommodation requests at some point between December 2019 and February 2023, D. 1-1 ¶¶ 3-5, and her initiation of this lawsuit on October 20, 2025, D. 1-1; see Thornton v. Macy's Retail Holdings, Inc., No. 20-cv-40045-DHH, 2021 WL 1430692, at *7 n.14 (D. Mass. Mar. 5, 2021) (noting that a plaintiff "cannot circumvent the statute of limitations bar by citing conduct with no date"); see also D. 8 at 13 nn.16 & 17, although Newton-Wellesley might have the better argument, the Court declines to dismiss the ADA claim on this ground as Newton-Wellesley raises this argument only in a footnote, see D. 16 at 4 n.7; Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap. LLC, 137 F.4th 6, 24 (1st Cir. 2025) (noting that arguments raised in a footnote are deemed waived).

plead satisfaction of this precondition to survive a Rule 12(b)(6) motion." Yaghoobi, 762 F. Supp. 3d at 93 (collecting cases); see Robertson v. Barber Foods, LLC, No. 19-cv-00455-NT, 2020 WL 3104047, at *4 (D. Me. June 11, 2020). Instead, like other affirmative defenses, "[a] court will only dismiss a claim based on an affirmative defense when 'the facts establishing the defense are clear on the face of the plaintiff[']s] pleadings and there is no doubt that the plaintiff[']s] claims are barred.'" Nakanwagi, 2024 WL 38749, at *7 (second and third alterations in original) (quoting Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023)).

Newton-Wellesley argues that because Hoffman did not file an ADA claim with the Equal Employment Opportunity Commission ("EEOC") or the Massachusetts Commission Against Discrimination ("MCAD"), Massachusetts's parallel state agency, within 300 days, her ADA claim before this Court is barred. D. 8 at 12-13. "The ADA incorporates the administrative procedures applicable to a claim under § 2000e–5 of Title VII." Hwang v. Wentworth Inst. of Tech., No. 11-cv-12042-MLW, 2013 WL 1414888, at *2 (D. Mass. Apr. 5, 2013) (citing 42 U.S.C. § 12117). Therefore, to recover for an asserted violation of the ADA, "an employee must first file a 'charge' with either: (1) the [EEOC] within 180 days of the alleged unlawful employment practice; or (2) a parallel state agency—in this case, MCAD—within 300 days of said practice." Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 41 (1st Cir. 2013) (citing 42 U.S.C. § 2000e–5(e)(1); Mass. Gen. L. c. 151B, § 5; Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005)). "[B]ecause Massachusetts is a deferral jurisdiction the administrative charge must be filed within 300 days of the alleged unlawful conduct." Hwang, 2013 WL 1414888, at *2 (internal citation and quotation marks omitted). After an employee has filed such a charge, "[a]n employee may only sue in federal court if the EEOC dismisses the administrative charge, does not bring civil suit, or does not enter into a conciliation agreement within 180 days of the filing." Aly, 711 F.3d at 41

12

(citing 42 U.S.C. § 2000e–5(f)(1)).  As such "absent special circumstances," this administrative exhaustion "must occur" within the prescribed 180- or 300-day timeframe "before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA."  <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 277 (1st Cir. 1999).  Further, the lawsuit subsequently filed "'must bear some close relation to the allegations presented to the agency.'"  <u>Flaherty v. Entergy Nuclear Operations, Inc.</u>, 946 F.3d 41, 56 (1st Cir. 2019) (quoting <u>Jorge</u>, 404 F.3d at 565).

In support of its failure to administratively exhaust argument, Newton-Wellesley relies upon Hoffman's November 3, 2023 MCAD charge against Newton-Wellesley for a violation of Mass. Gen. L. c. § 151B and the ADA, D. 9-1 at 2-3, and MCAD's February 28, 2025 dismissal of said charge, D. 9-2 at 2-4, both of which are included as exhibits to Newton-Wellesley's motion to dismiss.  <u>See</u> D. 9.  Both documents are subject to judicial notice.  <u>Gamst v. Bos. Univ.</u>, No. 23-cv-12452-FDS, 2024 WL 758173, at *1 n.1 (D. Mass. Feb. 23, 2024) (noting that "MCAD and EEOC documents are official public records subject to judicial notice, and therefore may be considered" at the motion to dismiss stage) (citing <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013)).

As these documents reflect, Hoffman filed an ADA charge with the MCAD on November 3, 2023, D. 9-1 at 2-3, and received a dismissal of said charge on February 28, 2025, D. 9-2 at 2-4, before filing the instant lawsuit in state court on October 20, 2025, D. 1-1; <u>see</u> <u>Exelero Corp. v. Cambece</u>, No. 23-cv-12301-PBS, 2024 WL 1007836, at *6 (D. Mass. Feb. 28, 2024) (noting that a court may take judicial notice of "the fact that certain [documents subject to judicial notice] exist, and the dates on which they were filed or issued").  To the extent Hoffman asserts a disability discrimination claim based on her termination, this claim has been administratively exhausted. First, the ADA charge was filed on November 3, 2023, less than 300-days after her termination on

February 1, 2023.  D. 9-1 at 2.  Second, the allegations included in the present lawsuit regarding her termination are sufficiently similar to the allegations in the charge.  Compare D. 9-1 at 2-3, with D. 1-1 ¶¶ 3-10.  Based on these facts, Newton-Wellesley has not demonstrated that Hoffman has failed to exhaust her administrative remedies as to her termination-based disability discrimination claim.

To the extent Hoffman asserts a failure to accommodate claim based on Newton-Wellesley's alleged denials of her purported accommodation requests, however, Hoffman has not administratively exhausted this claim.  As noted above, to assert an ADA claim in court, an ADA charge must first be filed with an administrative agency "within 300 days after the alleged act of discrimination."  Mass. Gen. L. c. 151B, § 5.  For her failure to accommodate claim, the relevant alleged acts of discrimination are Newton-Wellesley's alleged denials of her requests to (1) "return to work with crutches" following her fall, D. 1-1 ¶ 3, and (2) "work in the [lactation] clinic to get off her feet while healing," id. ¶ 5, not, as Hoffman suggests, D. 12 at 3-4, her termination.  The 300-day period during which she was required to file her ADA charge based on these alleged acts, therefore, began to run on the alleged day that each request was denied.  Although the complaint fails to specify the exact date upon which Newton-Wellesley allegedly denied these requests, as alleged, a period of at least "eighteen (18) months" transpired between when these requests were denied, D. 1-1 ¶¶ 3-6, and Hoffman's termination in February 2023, id. ¶ 10.  As the ADA charge was not filed until November 3, 2023, D. 9-1 at 2, it is clear on the face of the complaint that any claim based upon the alleged denial of these requests is barred because it falls outside the 300-day administrative-exhaustion window, see Mass. Gen. L. c. 151B, § 5.  Accordingly, Hoffman's failure to accommodate claim warrants dismissal on this ground.

14

2.     *Hoffman has failed to plausibly allege that she was a qualified individual under the ADA*

Dismissal of both theories of Hoffman's ADA claim is also warranted on the ground that Hoffman has failed to plausibly allege she is a qualified individual under the ADA. See D. 8 at 13-14. The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Therefore, although "disability discrimination claims and failure to accommodate claims . . . requir[e] different elements to be met . . . both claims require the plaintiff to establish she was disabled and that she had the ability to perform essential functions of the job with or without a reasonable accommodation." Manning, 357 F. Supp. 3d at 115 (citing Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 102-07 (1st Cir. 2005)); see Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 141-42 (1st Cir. 2021) (noting that "[t]he ADA defines a 'qualified individual' as 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position' in question") (quoting 42 U.S.C. § 12111(8)). To satisfy the qualified individual requirement of her ADA claims, Hoffman must plausibly allege that she "was a 'qualified individual' at the time of h[er] firing." Thompson, 989 F.3d at 141 (quoting 42 U.S.C. § 12112(a), (b)(5)(A)).

Newton-Wellesley argues that Hoffman has failed to plausibly allege that she was able to perform the essential functions of her position because she "concedes that she was unable to return to work (with or without accommodation)" before she was terminated. D. 8 at 13-14 & n.18 (citing D. 1-1 ¶ 9). As alleged, at some point prior to her termination, Hoffman underwent a third knee replacement surgery which "contributed to . . . her inability to return to the workforce in her prior capacity." D. 1-1 ¶ 9. The complaint contains no allegations that Hoffman would have been able

15

to return to her prior position following this third surgery with an accommodation or that she requested such an accommodation. Hoffman's unsupported assertion in her opposition that she could have performed the essential functions of a registered nurse "in a number of different areas, both administratively and in a number of different capacities within the healthcare network," D. 12 at 4, cannot save this claim, both because these allegations appear nowhere in the complaint, see Schatz, 669 F.3d at 55, and because Hoffman fails to explain how performing administrative work or working in a different capacity within the hospital demonstrates that she is qualified to perform her essential function as a registered nurse in her prior position, see Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006) (noting that "[t]he law does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous"); see, e.g., Phelps v. Optima Health, Inc., 251 F.3d 21, 25-26 (1st Cir. 2001) (concluding that a hospital was not required to exempt a nurse with a back disability from performing essential functions). Hoffman, therefore, has failed to plausibly allege that she was qualified to perform her essential function as a registered nurse, with or without an accommodation, at the time of her termination.

Accordingly, Hoffman has failed to plausibly allege an ADA claim.[4]

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Newton-Wellesley's motion to dismiss. D. 7.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

---

[4] Having determined that Hoffman's ADA claim fails on these grounds, the Court need not reach Newton-Wellesley's judicial estoppel argument. See D. 8 at 14-16.